IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, ) ) Plaintiff, ) ) v. ) ) ALTA COLLEGES, INC., a Delaware ) corporation, WESTWOOD COLLEGE, ) INC., a Colorado corporation d/b/a ) Westwood College and Westwood College ) Online, WESGRAY CORPORATION, a ) Colorado corporation d/b/a WESTWOOD ) COLLEGE-River Oaks and WESTWOOD ) COLLEGE-Chicago Loop, ELBERT, ) INC., a Colorado corporation d/b/a/ ) WESTWOOD COLLEGE-DuPage, and ) EL NELL, INC. , a Colorado corporation ) d/b/a WESTWOOD COLLEGE-O'Hare ) Airport, ) ) Defendants. ) | No. 14 C 3786 Judge Ronald A. Guzmán |

## MEMORANDUM OPINION AND ORDER

Plaintiff sues defendants (collectively, "Westwood") for their alleged violations of the Consumer Financial Protection Act and the Illinois Consumer Fraud and Deceptive Business Practices Act. The case is before the Court on Westwood's Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss and plaintiff's motion to sever and remand. For the reasons stated below, the Court denies both motions.

## Facts

Westwood is a for-profit, post-secondary school that has four campuses in Illinois and an online school that operates here. (2d Am. Compl. ¶ 1.) Westwood aggressively markets its programs to Illinois consumers in print media, on the internet, television and radio, through direct

mail and at job fairs. (*Id.* ¶¶ 1-2, 37-41, 46-49, 54-66.) Moreover, it makes false or misleading representations to consumers about the school's accreditation and admissions process, the cost of attaining a degree, the terms of loans offered by Westwood's in-house lending program, the jobs graduates will be qualified to obtain, and the likelihood that graduates will obtain employment in their chosen field. (*Id.* ¶¶ 1-7, 48-49, 56-58, 60-61, 67-78, 89, 91-92, 107-35, 141-42, 162-89, 192-216, 218, 226-70.)

On January 18, 2012, plaintiff filed a one-count complaint in state court alleging that defendants engaged in deceptive practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). (*See* Pl.'s Mem. Opp'n Defs.' Mot. Dismiss 2d Am. Compl., Ex. 1, Compl., *People v. Alta*, No. 12 CH 1587 (Cir. Ct. Cook Cnty.).) In March 2014, plaintiff sought leave to amend its complaint to add Count II, an ICFA unfair practice claim, and Counts III and IV for violation of the federal Consumer Financial Protection Act ("CFPA"). On May 6, 2014, the state court granted plaintiff's motion, and on May 22, 2104, defendants removed the suit to this Court.

## Discussion

**Motion to Dismiss – Federal Claims**

Westwood argues that the CFPA claims should be dismissed because plaintiff has not alleged that it is an entity subject to the statute. The Court disagrees. In relevant part, the statute defines "covered person" as one "that engages in offering or providing a consumer financial product or service," *i.e.*, "extend[s] credit and servic[es] loans . . . or [makes] other extensions of credit," if the service "is offered or provided for use by consumers primarily for personal, family, or household purposes." 12 U.S.C. § 5481(5)(A), (6)(A), (15)(A)(i). Plaintiff alleges that Westwood operates

an in-house student loan program called APEX, which places Westwood squarely within the definition of "covered person." (*See* 2d Am. Compl. ¶¶ 89-92, 127-34.)

Even if it is a "covered person," Westwood argues that it falls within the exemption for "merchant[s], retailer[s], or seller[s] of any nonfinancial good or service." *See* 12 U.S.C. § 5517(a). However, that exemption does not apply if the merchant "regularly extends credit . . . [that] is subject to a finance charge," and "is . . . engaged significantly in offering or providing consumer financial products or services." 12 U.S.C. § 5517(a)(2)(B)(iii), (C)(i). Plaintiff alleges that Westwood meets these qualifications. (*See* 2d Am. Compl. ¶¶ 67-135.)

Equally unpersuasive is Westwood's argument that the CFPA claims are doomed because the students identified in the complaint took out APEX loans before the Act's effective date. Though, as plaintiff concedes, it cannot recover for violations of the CFPA that occurred before the statute went in effect on July 21, 2011 (*see* Pl.'s Mem. Opp'n Defs.' Mot. Dismiss 2d Am. Compl. at 18), its failure to identify students who took out loans after that date is not fatal to its claims. Given plaintiff's allegation that Westwood has operated its APEX program since 2002 and continues to do so today (*see* 2d Am. Compl. ¶¶ 89, 477, 487-88), its failure to identify specific students who received APEX financing after July 21, 2011 is not a basis for dismissing the CFPA claims.

Alternatively, Westwood contends that Counts III and IV do not sufficiently allege the elements of an abusive or unfair practice claim under the CFPA. An unfair practice claim requires allegations that the practice causes or is likely to cause "substantial injury to consumers," consumers cannot reasonably avoid that injury, and the injury "is not outweighed by countervailing benefits to consumers or to competition." 12 U.S.C. § 5531(c)(1). An abusive practice claim requires allegations that a practice: (1) "materially interferes with [a consumer's] ability to understand a term

3

or condition of a consumer financial product or service"; or (2) "takes unreasonable advantage of (A) a [consumer's] lack of understanding . . . of the material risks, costs, or conditions of the product or service; (B) [his] inability . . . to protect [his] interests . . . in selecting or using a consumer financial product or service; or (C) [his] reasonable reliance . . . on a covered person to act in [his] interests." 12 U.S.C. § 5531(d).

Plaintiff alleges that Westwood induces students to enter into financing contracts with APEX, by:

> (1) targeting as potential students people who, because of socioeconomic background or lack of sophistication, have little or no knowledge about higher education and financial aid;
>
> (2) holding out salespeople as "admissions representatives" who will guide potential students to the education program best suited for them;
>
> (3) instructing admissions representatives to build a rapport with potential students and then pressure them to enroll immediately, using scripts provided by Westwood to overcome any objections or reluctance;
>
> (4) falsely telling potential students that Westwood has a selective or competitive admissions process, its credits are easily transferrable to other schools, and a Westwood degree can be the foundation for a graduate degree;
>
> (5) simultaneously enrolling students and signing them up for financial aid;
>
> (6) downplaying or misrepresenting the cost of Westwood's programs or evading cost-related questions;
>
> (7) falsely telling students that their APEX loans will be paid in full upon their graduation;
>
> (8) falsely telling students that Westwood has regional accreditation;
>
> (9) falsely telling students that (a) Westwood Criminal Justice graduates are eligible to be hired as federal, state or local police officers in Illinois; (b) most graduates of Westwood's Criminal Justice Program get law enforcement jobs, (c) Westwood graduates earn about $20,000.00 more per year than people with just a high school

diploma, and (d) a Westwood Criminal Justice Program graduate can obtain employment in law enforcement even if he has a criminal record; and

(10) bidding on internet search terms such as "FBI" and "state trooper," so that a Westwood ad appears when an Illinois consumer searches for such terms.

(2d Am. Compl. ¶¶ 46-49, 54-78,107-35, 139-89, 193-298, 300-10, 477; *id.*, Ex. 1, Staff of S. Comm. on Health, Education, Labor and Pensions, 112 Cong., *For Profit Education: The Failure to Safeguard the Federal Investment and Ensure Student Success* 37 ("HELP Report"), at 214-25 (Comm. Print July 30, 2012).) Plaintiff also alleges that Westwood takes these actions knowing that most students will leave Westwood without a degree or the hope of obtaining a well-paying job and with a debt that will take decades to repay and/or the certainty of being hounded by collection agencies. (2d Am. Comp. ¶ 477; *id.*, Ex. 1, HELP Report at 206, 214-25 (2012).) These allegations are sufficient to state CFPA claims for unfair and abusive practices.

Alternatively, Westwood asserts that the CFPA does not give plaintiff independent enforcement power but simply permits it to act as a "proxy" for an unconstitutional entity created by the statute, the Consumer Financial Protection Bureau ("Bureau"). Because the Bureau is unconstitutional, Westwood argues, it cannot permissibly enforce the statute by itself or through a proxy such as plaintiff.

The premise of this argument, that plaintiff does not have independent enforcement power, is based on § 5552 of the CFPA. That section permits a state attorney general to sue to enforce the statute, after notifying the Bureau of the state's intention to sue and giving the Bureau a copy of the complaint. 12 U.S.C. § 5552(a)(1), (b)(1)(A). After receiving the notice:

> [T]he Bureau may –
> (A) intervene in the action as a party;

>(B) upon intervening--
>(i) remove the action to the appropriate United States district court, if the action was not originally brought there; and
>(ii) be heard on all matters arising in the action; and
>(C) appeal any order or judgment, to the same extent as any other party in the proceeding may.

12 U.S.C. § 5552 (b)(2). In Westwood's view, subsection (C) allows the Bureau to appeal orders issued in state-filed enforcement actions in which the Bureau has not intervened, thus establishing that a state sues on behalf of the Bureau, not itself, when it enforces the CFPA.

The Court disagrees for two reasons. First, § 5552 expressly authorizes states to sue on their own behalf. *See* 12 U.S.C. § 5552(a)(1) ("[T]he attorney general . . . of any State may bring a civil action *in the name of such State* . . . to enforce provisions of this [statute] . . . .") (emphasis added); *United States v. Misc. Firearms, Explosives, Destructive Devices & Ammunition*, 376 F.3d 709, 712 (7th Cir. 2004) (stating that a court "must . . . assume that [the] plain meaning [of statutory language] accurately expresses the legislative purpose") (quotation omitted). Second, Westwood's interpretation of the Bureau's appellate rights as set forth in subsection (C), conflicts with the other subsections of this provision. Subsection (A) allows the Bureau to intervene "as a party" in a state-filed suit, and subsection (B) sets forth the actions the Bureau can take after intervening. Thus, read in context, subsection (C) – "[T]he Bureau may . . . appeal any order or judgment, to the same extent *as any other party* in the proceeding" – can only mean that the Bureau's appellate rights are limited to cases in which it intervenes. *See Misc. Firearms, Explosives, Destructive Devices & Ammunition*, 376 F.3d at 712 (stating that courts must interpret statutory provisions in their context and "not construe a statute in a way that makes words or phrases meaningless, redundant, or superfluous"). Because the plain language of the statute refutes the notion that the CFPA gives plaintiff no independent enforcement power, and that notion is the basis for Westwood's constitutional challenge

to plaintiff's prosecution of this suit, the Court rejects that challenge. Even if plaintiff's prosecution of this suit is constitutional, Westwood says the statute itself is not because its prohibition of "unfair, deceptive, or abusive act[s] or practice[s]" is unconstitutionally vague. *See* 12 U.S.C. § 5536(a)(1)(B). According to the Supreme Court:

> The degree of vagueness that the Constitution tolerates – as well as the relative importance of fair notice and fair enforcement – depends in part on the nature of the enactment. Thus, economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process. The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe. And the Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.
>
> Finally, perhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights. If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply.

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-99 (1982) (footnotes omitted). Because the CFPA is an economic regulation, and Westwood does not contend that the statute inhibits its constitutionally-protected activity, the CFPA is subject to a lenient vagueness test.

The statute easily passes that test. The CFPA provides a definition of "unfair" and "abusive" practices. *See* 12 U.S.C. § 5531(c)(1), (d) (defining an unfair practice as one that causes or is likely to cause substantial injury to consumers that they cannot reasonably avoid and is not outweighed by benefits to consumers or competition, and an abusive practice as one that materially interferes with a consumer's ability to understand a term of a financial product, or takes unreasonable advantage of his lack of understanding of the product's risks, costs, or conditions, his inability to

7

protect his interest in selecting it or his reasonable reliance on defendant to act in his best interests). The statute does not define a "deceptive" practice, but the Bureau says the phrase has the same meaning under the CFPA as it does under the Federal Trade Commission Act, *i.e.*, that the act or practice is "material," it "misleads or is likely to mislead the consumer," and "[t]he consumer's interpretation [of the act or practice] is reasonable under the circumstances." *See* Consumer Fraud Protection Bureau Supervision and Examination Manual v.2, pt. IIC at UDAAP 5 & n.10 (Oct. 2012), *available at* http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf (last visited Aug. 28, 2014) (citing Federal Trade Commission Policy Statement on Deception (Oct. 14, 1983), *available at* http://www.ftc.gov/public-statements/1983/10/ftc-policy-statement-deception (last visited Aug. 28, 2014).) In fact, the CFPA's general prohibition of "unfair, deceptive, or abusive act[s] or practice[s]," is virtually identical to the prohibition of "unfair or deceptive acts or practices" contained in the Federal Trade Commission Act, which the Seventh Circuit held was not unconstitutionally vague nearly a century ago. *See* 12 U.S.C. § 5536(a)(1)(B); 15 U.S.C. § 45(a)(1); *Sears, Roebuck & Co. v. F.T.C.*, 258 F. 307, 311 (7th Cir. 1919). In short, the Court rejects Westwood's vagueness challenge.

The Court is no more persuaded by Westwood's argument that plaintiff's enforcement of the CFPA violates the Illinois Constitution. Article V states that "[t]he Attorney General shall be the legal officer of the State, and shall have the duties and powers that may be prescribed by law." Ill. Const. art. V, § 15. These statutory duties include: (1) "institut[ing] and prosecut[ing] all actions and proceedings in favor of or for the use of the State, which may be necessary in the execution of the duties of any State officer"; (2) "investigat[ing] alleged violations of the statutes which the Attorney General has a duty to enforce"; and (3) "attend[ing] to and perform[ing] any other duty

8

which may, from time to time, be required of him by law." 15 Ill. Comp. Stat. 205/4. The plain meaning of this language encompasses the AG's enforcement of federal law as directed by statute, and Westwood offers no authority to support a different interpretation. Accordingly, the Court denies Westwood's motion to dismiss this suit as contrary to the Illinois Constitution.

**State Law Claims**

Westwood moves to dismiss the Count I ICFA deceptive practices claim as insufficiently pled. Plaintiff contends that this request is doomed by law of the case, the principle that courts generally do not revisit decisions they make during the course of a single case, unless refusing to do so will "produce an injustice" or the decision was "clearly erroneous." *Redfield v. Continental Cas. Corp.*, 818 F.2d 596, 605 (7th Cir. 1987). Plaintiff asks the Court to abide by the state court's determination that nearly identical allegations made in plaintiff's initial complaint stated a viable ICFA deceptive practices claim. (*See* Pl.'s Mem. Opp'n Mot. Dismiss 2d Am. Compl. Ex. 1, Compl., *People v. Alta*, 12 CH 1587 (Cir. Ct. Cook Cnty.); *id.*, Ex. 2, Defs.' Mem. Supp. Section 2-619.1 Mot. Dismiss, *People v. Alta*, 12 CH 1587 (Cir. Ct. Cook Cnty.); *id.*, Ex. 3, Order Denying Mot. Dismiss, *People v. Alta*, 12 CH 1587 (Cir. Ct. Cook Cnty.)); *see also Rekhi v. Wildwood Indus., Inc.*, 61 F.3d 1313, 1317-18 (7th Cir. 1995) (noting that law of the case applies to suits removed from state court).

Westwood contends that the Court should revisit the issue because the state court used the wrong legal standard to decide the motion. Specifically, Westwood says the state court wrongly believed that ICFA fraud claims were not subject to a heightened pleading standard. Though the state court recited a notice pleading standard, it nonetheless applied a heightened pleading standard,

9

concluding that plaintiff stated a viable ICFA claim because it identified specific misrepresentations made by specific Westwood representatives on specific dates. (*See* Pl.'s Mem. Opp'n Mot. Dismiss 2d Am. Compl. Ex. 3, Order Denying Mot. Dismiss at 4-6, *People v. Alta*, 12 CH 1587 (Cir. Ct. Cook Cnty.).) Because the state court applied the proper standard, despite its stated intent to do otherwise, there is no reason for this Court to revisit the decision. Accordingly, the Court denies Westwood's motion to dismiss Count I.

Westwood also asks the Court to dismiss the ICFA claim alleged in Count II because it "does not allege a single deception . . . much less identify one with particularity, as Rule 9(b) requires." (Defs.' Mem. Supp. Mot. Dismiss 2d Am. Compl. at 12.) Count II, however, is an unfair, not a deceptive, practices claim, and thus not subject to Rule 9(b). *See Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008) ("[A] cause of action for unfair practices under the Consumer Fraud Act need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)."). Because plaintiffs' allegations are sufficient to state an ICFA unfair practice claim under Rule 8 pleading standards, the Court denies Westwood's motion to dismiss it. *See id.* at 669 (stating that a practice is unfair within the meaning of ICFA if it "offends public policy," is "immoral, unethical, oppressive, or unscrupulous" or "causes substantial injury to consumers"); (2d Am. Compl. ¶¶ 46-49, 54-78,107-35, 139-89, 193-298, 300-10, 477; *id.*, Ex. 1, Staff of S. Comm. on Health, Education, Labor and Pensions, 112 Cong., *For Profit Education: The Failure to Safeguard the Federal Investment and Ensure Student Success* 37 ("HELP Report"), at 214-25 (Comm. Print July 30, 2012).)

**Motion to Sever**

Plaintiff asks the Court to sever the Count I ICFA deceptive practice claim from this suit, decline to exercise supplemental over the Count II ICFA unfair practice claim, and remand both claims to state court. Severance is necessary, plaintiff contends, because Count I arises from operative facts that are "separate and distinct" from those underlying the federal claims, and thus is not subject to the Court's supplemental jurisdiction. (Pl.'s Mem. Supp. Mot. Sever & Remand at 1); *see* 28 U.S.C. § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all [state law] claims that are so related to [the federal] claims . . . that they form part of the same case or controversy . . . ."); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (stating that supplemental jurisdiction can be exercised over state claims that arise from the same "nucleus of operative fact" as federal claims "such that [plaintiff] would ordinarily be expected to try" the state and federal claims together). This argument is a nonstarter, given that the state court allowed plaintiff to join the claims in one suit, which is only permissible when claims "arise out of closely related 'transactions' and . . . [have] a significant question of law or fact . . . [in] common." *See Boyd v. Travelers Ins. Co.*, 652 N.E.2d 267, 272 (Ill. 1995).

Even if supplemental jurisdiction exists over Count I, plaintiff argues that the Court should not exercise it. Because the parties completed discovery and were ready to try Count I in state court, plaintiff says keeping that claim here will inevitably result in this Court's duplication of work done by the state court. The Court disagrees. Discovery done on Count I in state court will not be repeated here, and absent unusual circumstances, the doctrines of law of the case or collateral estoppel will bar relitigation of issues decided by that court. Thus, judicial economy is not a basis for splitting this case in two.

Alternatively, plaintiff asks the Court to decline to exercise supplemental jurisdiction over the ICFA claim in Count II because it raises a novel issue of state law: Is extending loans to borrowers without considering their ability to pay an unfair practice under the ICFA? (Pl.'s Mem. Supp. Mot. Sever & Remand at 14); *see* 28 U.S.C. § 1367(c)(1) ("[The district courts may decline to exercise supplemental jurisdiction over a claim . . . [that] raises a novel or complex issue of State law . . . ."). As Westwood implicitly admits, the Illinois courts have yet to address precisely this question. (*See* Defs.' Resp. Pl.'s Mot. Sever & Remand at 12-13.) Thus, the Court agrees with plaintiff that this is a novel issue of Illinois law.

The Court does not agree, however, that it should relinquish supplemental jurisdiction over the claim. Courts generally do so only when:

> [The state law claims] address issues of first impression that are numerous or of constitutional magnitude. *See, e.g., Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031, 1037-38 (8th Cir. 1999) (affirming a district court's decision to decline to exercise jurisdiction under § 1367(c)(1) when the claims involved at least six "complex substantive and remedial issues of first impression"); *Castellano v. Bd. of Trustees of Police Officers' Variable Supplements*, 937 F.2d 752, 758-59 (2d Cir. 1991) (declining supplemental jurisdiction and concluding that "it would be, at the very least, imprudent for us to determine a state constitutional claim of first impression").

*Schwarm v. Craighead*, 233 F.R.D. 655, 659 (E.D. Cal. 2006); *see Bonilla v. City Council of City of Chi.*, 809 F. Supp. 590, 599 (N.D. Ill. 1992) (stating that supplemental jurisdiction should not be exercised over the issue of whether "enactment of a redistricting ordinance pursuant to the Illinois statutory scheme can create mid-term aldermanic vacancies"). However, when a court "faces a single, unexceptional question of statutory interpretation," it is appropriate to exercise supplemental jurisdiction. *Schwarm*, 233 F.R.D. at 659 (exercising supplemental jurisdiction over the novel claim of "whether [defendant debt collectors] had statutory authorization under California law to seek fees

from putative plaintiffs beyond the actual amount of bank charges incurred"). Given Count II's unremarkable nature, the wealth of case law interpreting the ICFA, the commonality of the claims in this suit, and the efficiency of litigating them together, the lack of precedent "on all fours" with Count II is not a basis for declining to exercise supplemental jurisdiction over it.

## Conclusion

For the reasons set forth above, the Court denies Westwood's motion to dismiss [17] and plaintiff's motion to sever and remand [23].

**SO ORDERED.**                    **ENTERED:  September 4, 2014**

                                    _____
                                    **HON. RONALD A. GUZMAN**
                                    **United States District Judge**