**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  14-cv-3786 |
| vs. | ) | |
| | ) | |
| ALTA COLLEGES, INC., *et al* | ) | Judge Ronald Guzman |
| | ) | |
| Defendants. | ) | Mag. Judge Geraldine Soat Brown |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF**
**MATERIAL FACTS**

Plaintiff, the People of the State of Illinois, by Lisa Madigan, Attorney General of the

State of Illinois, respectfully submits this Response to Defendants' Local Rule 56.1 Statement of

Material Facts:

1.      This Court has federal question jurisdiction over Counts III and IV, pursuant to 28

U.S.C. § 1331, and supplemental jurisdiction over Counts I and II, pursuant to 28 U.S.C.

§1367(a). (Dkt. 53, Memorandum Opinion and Order, pp. 11-13.)

**RESPONSE:** Paragraph 1 contains a legal conclusion to which no response is required. To the

extent a response is required, Plaintiff admits the facts contained therein.

2.      Venue is proper in this Court under 28 U.S.C. § 1391(b) and (d) because

defendants conduct business here and a substantial portion of the events and conduct giving rise

to the AG's claims occurred in the Northern District of Illinois. (Dkt. 57, Second Amended

Complaint "SAC," ¶I1.)

**RESPONSE:** Paragraph 2 contains a legal conclusion to which no response is required. To the extent a response is required, Plaintiff admits the facts contained therein.

3.      Defendants own and operate Westwood College, which is an undergraduate institution that provides student with a career-focused education. Westwood College has four ground campuses in Illinois — all in the Chicagoland area — along with an online school, Westwood College Online. (SAC, ¶ 1; Exhibit A, Affidavit of William Ojile, ¶ 2.)

**RESPONSE**: Admitted.

4.      Westwood is a nationally accredited school. (SAC, ¶ 5.)

**RESPONSE**: Admitted.

5.      Defendants' Illinois campuses offer fourteen degrees, (Exhibit A, Affidavit of William Ojile, ¶ 2), however, the AG's claims only target the criminal justice program. (SAC, *passim.*)

**RESPONSE**: Admitted.

6.      Westwood's criminal justice program is the equivalent of a four year bachelor's degree program. (SAC, ¶ 2; Exhibit A, Affidavit of William Ojile, ¶ 2.)

**RESPONSE**: Plaintiff admits that Westwood offers a bachelor's degree program, but denies it is the "equivalent" to a four year program. Defendants' citations and the record do not support such a conclusion.

7.      As an "institution of higher education" under Title IV of the Higher Education Act ("HEA"), 20 U.S.C. §§ 1001, 1002(b), Westwood is subject to extensive federal and state regulatory oversight and must satisfy substantial monitoring, disclosure and reporting requirements. In addition, to participate in the Title IV federal financial aid programs Westwood must maintain accreditation by an accrediting body approved by the United States Department of

Education ("USDOE"). Westwood's campuses in Illinois have accreditation with the Accrediting Council for Independent Colleges and Schools ("ACICS"). (Exhibit A, Affidavit of William Ojile, ¶¶ 4-5.) Finally, Westwood's campuses in Illinois must maintain authorization by the Illinois Board of Higher education ("IBHE"), and is governed by that body's regulations. *(Id.,* Affidavit of William Ojile, ¶ 6.) Combined, the regulations promulgated by USDOE and IBHE, and the ACICS accrediting standards, cover all aspects of Westwood's operations, including marketing of the school and its financial aid program. *(Id.,* ¶ 7.) Defendants have never been found to be out of compliance by USDOE, IBHE or ACICS with respect any of the areas alleged by the AG in the Second Amended Complaint ("SAC"). *(Id.,* ¶ 9.)

**RESPONSE**: Westwood's regulatory environment does not raise any facts that are material to Defendants' motion for summary judgment. Plaintiff admits that Westwood's Illinois campuses have accreditation with ACICS. Plaintiff lacks sufficient knowledge to admit or deny the remaining facts or Defendants' characterization of that environment.

8.     Westwood, like nearly every other institution of higher education (and practically every other business), advertises through various means, including the internet, to attract students. (SAC, in 1, 40-41.) Westwood's regulatory group reviews and approves all advertising and major recruitment materials before they are used. (Exhibit A, Affidavit of William Ojile, ¶ 8; Exhibit B, Schiffner Dep. 27:17-28:5; 49:7-25; 73:15-74:23.)

**RESPONSE**: Plaintiff admits that Westwood advertises through the internet and other avenues to attract students. Plaintiff lacks sufficient knowledge to admit or deny the practices of "every other institution of higher education (and practically every other business)." Plaintiff admits the last fact in Paragraph 8.

3

9.      Defendants maintain a website located at www.westwood.edu. (SAC, ¶ 40.) The AG has never suggested that Defendants' website contains any incorrect or misleading information. (SAC, *passim.)*

**RESPONSE**: Plaintiff admits that Defendants maintain a website at www.westwood.edu, but denies the remainder of Paragraph 9. Plaintiff alleges throughout her complaint that Defendants' website is misleading. *See, e.g.,* SAC ¶¶ 193-208.

10.      Like millions of other businesses, Defendants use a Google product called "AdWords" in an effort to drive traffic to their website. (SAC, ¶ 301.)

**RESPONSE**: Admitted.

11.      AdWords is Google's "pay-per-click" advertising program through which advertisers may bid on "keywords" (which may be words or phrases), which could increase the likelihood that Google will display its advertisement when the keyword is used in a Google search entered by an internet user. (Exhibit C, Stricchiola Report at 6-10 and Exs 1-2.); *see also* Brad Geddes, *Advanced Google AdWords,* 2d ed. 2012; [sic]

**RESPONSE**: Admitted.

12.      Hundreds of thousands of businesses advertise using Google AdWords. http://www.wordstream.com/blog/ws/2012/08/13/google-adwords-facts (last visited December 4, 2014); http://www.quora.com/How-many-advertisers-are-using-Google-AdWords (last visited December 2, 2014). In 2012, Google realized more than $43.5 billion (96% of its total revenues) from advertising alone. (Exhibit C, Stricchiola Report at 8, Ex. 2.)

**RESPONSE**: Paragraph 12 does not contain facts material to the motion for summary judgment, and Plaintiff lacks sufficient knowledge to admit or deny it.

13.     As part of Google AdWords, an advertiser "bids" on keywords. An advertiser's bid on a keyword constitutes its agreement to pay a specified fee to Google each time an internet user clicks on the advertiser's link after having searched using the keyword. *(Id.,* Stricchiola Report at 6.)

**RESPONSE**: Admitted.

14.     The advertiser also provides Google with an advertisement *(i.e.,* the text that will be displayed to the Internet user as a search result when the keyword is entered) and a link to the advertiser's "landing page" (the website the internet user will go to if they click on the advertisement link). *(Id.,* Stricchiola Report at 8); *see also* https://support.google.com/adwords/answer/14086?h1=en (last visited December 12, 2014).

**RESPONSE**: Admitted.

15.     An advertisement is not displayed simply because the advertiser bid on a keyword. Google prioritizes relevance over monetization of advertising revenues because it wants to ensure a positive user experience so the internet user will continue to use Google as his or her search engine. *(Id.,* Stricchiola Report at 8.)

**RESPONSE**: Paragraph 15 does not contain facts material to the motion for summary judgment, and Plaintiff lacks sufficient knowledge to admit or deny it.

16.     As a result, Google systematically compares the keyword to the advertisement and landing page, and calculates a "Quality Score" to determine whether to display the advertisement when the keyword is entered by a user. *(Id.,* Stricchiola Report Exhs 5, 6.)

**RESPONSE**: Paragraph 15 does not contain facts material to the motion for summary judgment. To the extent it is relevant, Plaintiff admits it.

17.     If the AdWords system determines that the advertisement's relevance (Quality Score) is low, that will cause the advertisement to be shown at a lower frequency, at a lower position, or not at all on the results page. *(Id.,* Stricchiola Report at 6, 9.)

**RESPONSE**: Paragraph 17 does not contain facts material relevant to the motion for summary judgment. To the extent it is relevant, Plaintiff admits it.

18.     Bidding on keywords that are poorly tailored to an advertiser's product is undesirable because if a customer clicks on a website and finds information or a product he or she is not interested in, the advertiser will have to pay Google a fee without generating additional sales. (Exhibit D, Claypool Dep. 16:5-17:21; Exhibit E, Stricchiola Dep. 103:10-17.)

**RESPONSE**: Paragraph 18 does not contain facts material to the motion for summary judgment. To the extent it is relevant, Plaintiff denies it, as students may enroll in Defendants' program without realizing that the program will not prepare them for their career goals. (Pl.'s SOF ¶ 34.)

19.     Westwood's Google AdWords campaign uses a variety of terms designed to reach consumers who might be interested in educational programs relating to criminal justice or law enforcement. For example, it includes keywords relating to "police," "FBI," "state troopers," and "criminal justice." (Exhibit E, Stricchiola Dep. Exhs 284, 285.)

**RESPONSE**: Admitted.

20.     The AG claims that Westwood's advertising campaign is fraudulent because it bid on key terms relating to "FBI" and "state trooper." (SAC ¶¶ 299-310.) The AG claims this is fraudulent because "no Westwood graduate in Illinois has ever been employed at the FBI after graduation, a fact not disclosed on Westwood's website" *(Id.,* ¶ 306) and "Westwood graduates cannot obtain employment as a State Trooper in Illinois, a fact not disclosed on Westwood's website." *(Id.,* ¶ 309.)

6

**RESPONSE**: Plaintiff's allegations in the Second Amended Complaint speak for themselves. To the extent a response to Westwood's characterization of Plaintiff's allegations is required, Plaintiff denies this paragraph as the characterization is incomplete and imprecise.

21. The primary author of the AG's allegations relating to Westwood's internet advertising was Kevin Hudspeth, a former Assistant Attorney General. (Exhibit F, Hudspeth Dep.11:12-12:6.)

**RESPONSE**: Paragraph 21 does not contain facts material to the motion for summary judgment. To the extent it is relevant, Plaintiff denies it.

22. Mr. Hudspeth has admitted that he has only a "vague understanding of what keywords are." *(Id.,* Hudspeth Dep. 84:21-23), and does not understand many of the basic aspects of internet searches and internet marketing, including what pay-per-click searches are *(id.* 19:8-16);what organic searches are *(id.* 19:17-18); whether Google manages pay-per-click and organic search results the same way *(id* 20:17-22); what broad matching is *(id.* 23:6-7); what phrase matching is *(id.* 25:16-17); what exact matching is *(id.* 25:19-20); how Google determines what ads are displayed in response to a search *(id* 29:21-30:20; 34:15-20, 38:6-11); what a quality score is or how it is calculated *(id* 39:2-14); and what a "click" is *(id* 69:14-15).

**RESPONSE**: Paragraph 22, which purports to describe Mr. Hudspeth's knowledge more than a year after this lawsuit was filed, and long after he had left Plaintiff's employment, does not contain facts material to the motion for summary judgment, which attacks the Second Amended Complaint that Mr. Hudspeth had no role in drafting. To the extent this paragraph is relevant, Plaintiff admits that Defendants cited selective excerpts of Mr. Hudspeth's deposition, but deny Defendants' characterizations of Mr. Hudspeth's testimony. Plaintiff separately has moved to strike Mr. Hudspeth's testimony.

23. Both parties' experts acknowledge that it is reasonable — meaning not deceptive, misleading, confusing, or unfair — for an advertiser to bid on keywords regarding a product that it does not sell if that product is similar or related to the advertiser's product such that a consumer considering purchasing one product might consider purchasing the other. (Exhibit E, Stricchiola Dep. 98:21-99:10; 118:6-119:11; Exhibit D, Claypool Dep. 90:17-91:14; Exhibit F, Hudspeth Dep. 48:18-49:16, 95:13- 96:2.)

**RESPONSE**: Denied. Plaintiff's expert, Mr. Claypool, is not, nor does he purport to be, an expert on deception or confusion. (Defs.' Ex. D, Claypool Dep. 107:3-107:19.) Additionally, his responses to Defendants' queries cited here were based on a hypothetical by counsel that falsely implied Westwood prepared graduates for careers with the Illinois State Police:

> 5  MR. STEESE:  Every single question
> 6  I said until I was done I want him to assume
> 7  that Westwood has prepared graduates and, in
> 8  fact, placed graduates in various police
> 9  departments within the Chicago metropolitan
> 10  area, and that is the assumption.  Given
> 11  those assumptions, would it be fair for
> 12  Westwood to bid on state trooper college or
> 13  state trooper degrees?

*Id.* 91:3-91:14. The misleading nature of counsel's hypothetical is revealed by Mr. Claypool's earlier response that the only way bidding on "Illinois State Police" would *not* be deceptive is if Westwood actually prepared graduates for the Illinois State Police:

> 11    Q.  So if you put in join the Illinois
> 12  State Police and you think the only way it
> 13  would not be deceptive is if it prepared you
> 14  for a job with the Illinois State Police?
> 15    A.  Correct.

*Id.* 88:11-88:15.

8

With respect to Ms. Stricchiola, Defendants' expert, she is not, nor does she purport to be, an expert on deception or confusion. (Ex. 1, Stricchiola Dep. 109:17-113:11. *See also* Pl.'s Mot. to Strike.) In fact, Ms. Stricchiola did not even realize that the Illinois State Police would not hire Westwood graduates until her deposition, which took place after she wrote her report. (Ex. 1, Stricchiola Dep. 85:10-85:15.) Once she was told by Plaintiff's counsel that the Illinois State Police would not hire Westwood graduates, she agreed that Westwood's strategy could cause confusion:

> Q. And if somebody Googles, I want to become an
> 3 Illinois State Trooper, and they see an ad for Westwood
> 4 College, that may cause some confusion as to whether the
> 5 Criminal Justice Program at Westwood prepares them to
> 6 become an Illinois State Trooper, right?
> 7 A. Yes.

(*Id.* 100:2-100:7.) Ms. Stricchiola also did not realize, until her deposition, that FBI had never hired a Westwood graduate. (*Id.* 100:9-100:13.)

Finally, Mr. Hudspeth is not an expert or lay witness in this matter, so citations to his deposition are neither relevant nor admissible. Plaintiff separately has moved to strike both Ms. Stricchiola's and Mr. Hudspeth's opinion on deception and confusion.

24.     For example, as Mr. Hudspeth, the former Assistant Attorney General who drafted the AG's allegations relating to Westwood's internet advertising, acknowledged it would not be deceptive for a company that sells chocolates to bid on keywords relating to flowers, because someone who is shopping for flowers might also be interested in buying chocolates. (Exhibit F, Hudspeth Dep. 48:18-49:16.) Likewise, a Tesla dealer might bid on "hybrid" cars — even though Teslas are not hybrids at all — in case (a) potential customers did not realize that Tesla engines are entirely electric, not hybrid electric/combustion, or (b) a consumer looking for

a hybrid car might be convinced to buy an electric car instead. (Exhibit E, Stricchiola Dep. 98:21-99:10.)

**RESPONSE**: Denied. Mr. Hudspeth is not an expert or lay witness in this matter, and his testimony is neither relevant nor admissible. Plaintiff separately has moved to strike Mr. Hudspeth's testimony. With respect to Defendants' Tesla analogy, it is just that—an analogy, not a material fact which can be denied or admitted.

25.     The AG's internet marketing expert testified that, because it is reasonable for an advertiser to bid on keywords relating to a product that it does not sell but that is similar or related to the advertiser's product, Westwood's bidding on keywords relating to "Illinois State Trooper" was "fair" and not deceptive. (Exhibit D, Claypool Dep. 88:16-91:14.)

**RESPONSE**: Denied. Plaintiff's expert, Mr. Claypool, is not, nor does he purport to be, an expert on deception or confusion. (Defs.' Ex. D, Claypool Dep. 107:3-107:19.) Additionally, his response to Defendants' query cited here was based on a hypothetical by counsel that falsely implied Westwood prepared graduates for careers with the Illinois State Police:

```
 9   Q.  I had given you the same
10   assumptions and that is that Westwood has
11   placed graduates in jobs as police officers
12   in the Chicagoland area in various
13   positions.
```

(*Id.* 87:9-87:13.) The misleading nature of counsel's hypothetical is revealed by Mr. Claypool's subsequent clarification:

```
 5      A.  If we are talking about a person in
 6   the Chicago area wanting to get a job at the
 7   Illinois State Police and the Westwood
 8   program prepares them for a job at the
 9   Illinois State Police, that would not be
10   deceptive.
11   Q.  So if you put in join the Illinois
12   State Police and you think the only way it
```

10

13  would not be deceptive is if it prepared you
14  for a job with the Illinois State Police?
15     A.   Correct.

(*Id*. 88:5-88:15.) This response is consistent with Mr. Claypool expert report. Ex. 14 at 4. Thus,

Plaintiff's expert is in agreement with Defendants' expert that Westwood's State Trooper

marketing **can** lead to confusion. Ex. 1, Stricchiola Dep. 100:2-100:7.

26.    Former Assistant Attorney General Hudspeth also agreed that even if a college's

degree was not recognized by some police departments in Illinois, it would be "fair" for an

advertiser to bid on the keyword phrase "Illinois State Police," "because some people might be

interested in working for a police department within the State of Illinois that accepts a nationally

accredited degree." (Exhibit F, Hudspeth Dep. 95:13-96:2.)

**RESPONSE**: Mr. Hudspeth is not an expert or lay witness in this matter, and his testimony is

neither relevant nor admissible. Plaintiff separately has moved to strike Mr. Hudspeth's

testimony. Plaintiff admits that Defendants have attached citations from a portion of Mr.

Hudspeth's deposition, but deny Defendants' characterizations of Mr. Hudspeth's testimony. To

the extent Plaintiff is required to respond to the argument asserted therein, Plaintiff denies that

Westwood's practices are "fair" or lawful, as evidenced by Plaintiff's Complaint. (SAC ¶¶ 299-

310.)

27. To become an FBI Special Agent an applicant must possess a four year degree from

a national or regionally accredited school. (*Id.,* Hudspeth Deposition, Ex. 356.)

**RESPONSE**: Admitted.

28. A degree from Westwood's criminal justice program satisfies the educational

prerequisites to become a FBI Special Agent as well as an officer in numerous police

departments in Illinois. (*Id.;* Exhibit G, Rivera Dep., Ex. 59.)

11

**RESPONSE**: Denied. Defendants' degree program is three years, while the FBI requires a "four-year degree." Defs.' Ex. A, ¶2; Defs.' Ex. F. The record does not support a finding that a three-year degree is "equivalent" to a four-year degree. (*See* Pl.'s SOF ¶¶ 7-8.)

29.     The AG's expert admitted that if a criminal justice program provides the prerequisites to become a FBI Special Agent, then it is "perfectly valid" and "fair" for Westwood to bid on terms relating to the FBI, such as "FBI career path," "FBI college," "FBI requirements," "FBI academy," and "FBI school." (Exhibit D, Claypool Dep. 63:21-64:11; 67:2-8; 72:16-23; 73:9-14.)

**RESPONSE**: Denied. As an initial matter, Mr. Claypool was responding to a hypothetical contrary to the record in this matter:

```
1    Q.   And if you offer a criminal justice
2    program that allows one to get prerequisites
3    that would qualify a person to work with the
4    FBI, do you think it's fair for them to bid
5    on an FBI career path?
```

(Defs.' Ex. D, Claypool Dep. 64:1-64:5.) In fact, there is no evidence that Westwood qualifies graduates for the FBI, and no Westwood graduate in Illinois has ever joined the FBI. (*See* Pl.'s SOF ¶¶ 7-8.) Second, Mr. Claypool is not, nor does he purport to be, an expert on deception or confusion. (Defs.' Ex. D, Claypool Dep. 107:3-107:19.) Finally he is not, nor does he purport to be, an expert on a) the FBI's hiring requirements; b) whether Westwood prepares graduates for a career in the FBI; c) where Westwood graduates are placed; or d) the nature of Westwood's accreditation. (*Id.* 64:13-80:21.)

30.     The AG's internet marketing expert testified "I see nothing deceptive" about the specific advertisements Westwood used in connection with FBI-related searches. (Exhibit D, Claypool Dep. 93:12-96:10.)

**RESPONSE**: Denied. As an initial matter, Mr. Claypool is not, nor does he purport to be, an

expert on deception or confusion. (Defs.' Ex. D, Claypool Dep. 107:3-107:19.) Second, Mr.

Claypool was premising his responses on a hypothetical contrary to the record in this matter:

```
1    Q.   And if you offer a criminal justice
2    program that allows one to get prerequisites
3    that would qualify a person to work with the
4    FBI, do you think it's fair for them to bid
5    on an FBI career path?
```

(*Id.* 64:1-64:5.) Finally, Defendants misquote Mr. Claypool, who in fact states that he sees

nothing deceptive "[a]s long as Westwood prepares you for – enables you to have a career with

the FBI…." (*Id.* 94:13-94:15.) Westwood does not. (*See* Pl.'s SOF ¶¶ 7-8.)

31.     Internet advertising is difficult because determining a user's intent from a Google

search is an inherently imprecise endeavor. (Exhibit B, Stricchiola Dep. 97:5-99:10 (emphasizing

that Google searches are a process whereby "a human is entering language by characters and

keywords, and a machine is trying to interpret and determine intent."); *id.* 116:6-10 (a search

engine "understand[s], generally speaking, the theme . . . or the various concepts that might be

enteredusing keywords, but we can't limit them without the person literally saying in great detail,

paragraph upon paragraph, this is exactly what I want.").

**RESPONSE**: Paragraph 31 states an opinion, not a material fact that can be admitted or denied.

To the extent Paragraph 31 contains material facts that require a response, Plaintiff denies them.

Ms. Stricchiola admits that in certain contexts, it is reasonable to draw conclusions about a

searcher's intent based on the searcher's query. (Ex. 1, Stricchiola Dep. 86:3-88:22; 94:4-94:10.)

Mr. Claypool, meanwhile, responding to a question about a consumer who enters into Google

"FBI College," offered the following testimony: "keywords are selected based on the probable

intent; and we start with it's very probable that they are looking for a college that will prepare

them for the FBI all the way down to it's very improbable that they are searching for the college that J. Edgar Hoover went to before starting the FBI, for instance." (Defs.' Ex. D, Claypool Dep. 62:17-63:13.)

32.     An appropriate characterization of the information conveyed by the appearance of an advertisement in response to a Google search is something along the lines of "this website may have information that is relevant to your query." (Exhibit E, Stricchiola Dep. 73:14-75:2; 103:23-104:1 ("the goal is to provide relevant results and related information. And that the users decide what they deem to be important and what they deem to be not important."); *id.* 116:3-16.)

**RESPONSE**: Paragraph 32 states an opinion, not a material fact that can be admitted or denied. To the extent Paragraph 32 contains facts that require a response, Plaintiff denies them. Ms. Stricchiola admits later in her deposition that if consumers are directed away from the topic searched for—such as in the hybrid vs. electric Tesla example discussed above—"they should be exposed to that additional information [about hybrid vs. electric cars] before the purchase of the car." (Ex. 1, Stricchiola Dep. 98:21-99:14.)

33.     The AG's internet marketing expert testified that "the job of the internet [is] to return answers to the exact query *and other things that [the user] might be interested in as well."* (Exhibit D, Claypool Dep. 85:8-22 (emphasis added).) For example, he agreed that someone performing a Google search for "become a federal agent" "might be interested in criminal justice generally." *(Id.* 61:11-17.)

**RESPONSE**: Paragraph 33 states an opinion, not a material fact that can be admitted or denied. To the extent Paragraph 33 contains facts that require a response, Plaintiff admits that Mr. Claypool testified consistent with Defendants' description. Mr. Claypool also testified that "keywords are selected based on the probable intent; and we start with it's very probable that

14

they are looking for a college that will prepare them for the FBI all the way down to it's very improbable that they are searching for the college that J. Edgar Hoover went to before starting the FBI, for instance." (Defs.' Ex. D, Claypool Dep. 62:17-63:13.)

34.     A well-designed AdWords campaign seeks to maximize the likelihood that potentially interested consumers will receive the advertisement. (Exhibit C, Stricchiola Report at 2;Exhibit D, Claypool Dep. 16:12-16:17.) For example, as Westwood's internet marketing expert explained, "[i]t makes sense, in the mind of a search marketer, to presume that someone who is interested in the requirements to become a police officer might also be interested in a Criminal Justice program .... Based on these understandings I would consider the serving of Defendants' ads in response to the query in question to be a standard component of [pay-per-click] advertising." (Exhibit C, Stricchiola Report at 1-2.)

**RESPONSE**: Paragraph 34 lists a series of opinions, not material facts that can be admitted or denied. To the extent Paragraph 34 contains facts that require a response, Plaintiff denies that Defendants' marketing techniques are standard, appropriate, or lawful. (SAC ¶¶ 299-310.)

35.     Google's "keyword planner" is a widely used tool which helps advertisers to select relevant keywords. (Exhibit D, Claypool Dep. 132:7-133:16.) This tool suggests possible words that advertisers may want to bid on. (Exhibit E, Stricchiola Dep. 25:9-11.) Using keywords suggested by Google's keyword planner is a standard, fair, and non-deceptive practice. (Exhibit D, Claypool Dep. 136:13-20; 141:3-142:2.)

**RESPONSE**: Plaintiff admits that Google's "keyword planner" is a widely used tool by advertisers. Plaintiff denies the remainder of the paragraph 35. Marketers have a responsibility to understand their target audience, including in the keyword context. (Defs.' Ex. D, Claypool Dep. 59:10-60:21) ("If I'm creating the campaign, I would see it as my responsibility to understand the

minutia of the industry for which I am advertising, yes."). The facts asserted in Paragraph 35 are not material, as Westwood's compliance department must approve all marketing. (Defs' SOF ¶ 8). Using Google's keyword planner to target consumers who cannot benefit from Defendants' product is unlawful. (SAC ¶¶ 299-310.)

36.     Many of the FBI-related keywords used by Westwood are suggested by the Google keyword planner. *(Id.,* Claypool Dep. 134:15-138:9.16.)

**RESPONSE**: Plaintiff lacks sufficient knowledge to admit or deny Paragraph 36 and therefore denies Paragraph 36. Mr. Claypool's testimony cited here was in response to Defendants' counsel creating, the day before the deposition, a "dummy" keyword planner. *See* Defs.' Ex. D, Claypool Dep. 133:24-134:10. There is no evidence in the record indicating who selected the keywords bid upon by Westwood. The facts asserted in Paragraph 36 are not material, as Westwood's compliance department must approve all marketing.  (Defs' SOF ¶ 8)

37.     Bidding on AdWords keywords that are related, but not perfectly tailored, to the advertiser's product are an unavoidable outgrowth of the imprecise nature of trying to determine a user's intent. They are "inherent to the standard process of internet and search engine marketing."(Exhibit C, Stricchiola Report at 1-2, 11, 15.)

**RESPONSE**: Denied. They keyword planner is merely a time-saving aid; at all times, the marketer has input in the process and makes the ultimate decision. Defs.' Ex. D, Claypool Dep. at 133:2-133:5; 139:8-141:19. A marketer retains responsibility to understand their target audience. *Id*. 59:10-60:21.  The facts asserted in Paragraph 37 are not material, as Westwood's compliance department must approve all marketing.  (Defs' SOF ¶ 8)

38.     The AG's assertion that Westwood's AdWords campaign is deceptive "is tantamount to stating that internet search advertising as a whole is inherently deceptive." (Exhibit C, Stricchiola Report at 1.)

**RESPONSE**: Paragraph 38 states an opinion, not a fact that can be admitted or denied. To the extent Paragraph 38 contains facts that require a response, Plaintiff denies them. Plaintiff's internet marketing allegations are directed squarely at Defendants' deceptive advertising practices, not internet marketing generally. (SAC ¶¶ 299-310.)

39.     Whether an ad is deceptive depends in large part on the content of the website to which the user is directed *(i.e.,* the landing page). (Exhibit D, Claypool Dep. 76:6-9; Exhibit E, Stricchiola Dep. 91:18-92:22; Exhibit F, Hudspeth Dep. 119:13-120:6.)

**RESPONSE**: Paragraph 39 states a legal conclusion to which no response is required. To the extent Paragraph 39 contains material facts that require a response, Plaintiff denies them. Plaintiff alleges that Westwood's keyword bidding and its failure to disclose the limitations of its degree is a deceptive practice. (SAC ¶¶ 299-310.) With respect to the testimony cited, Plaintiff's expert, Mr. Claypool, is not, nor does he purport to be, an expert on deception or confusion. (Defs.' Ex. D, Claypool Dep. 107:3-107:19.) Ms. Stricchiola, Defendants' expert, is likewise not, nor does she purport to be, an expert on deception or confusion. (Ex. 1, Stricchiola Dep. 109:17-113:11. *See also* Pl.'s Mot. to Strike.) Finally, Mr. Hudspeth is not an expert or lay witness in this matter, so citations to his deposition are neither relevant nor admissible. Plaintiff separately has moved to strike Mr. Hudspeth's testimony.

40.     The AG does not allege that Westwood's landing pages *(i.e.,* website) contained any inaccurate or untruthful information. Mr. Hudspeth, the former Assistant Attorney General who drafted the allegations relating to Westwood's internet advertising agreed consumers could

not be misled unless they "clicked" on a Westwood advertisement to proceed to Westwood's website, and Westwood's website contained inaccurate or false information. (Exhibit F, Hudspeth Dep. 73:15-74:23.)

**RESPONSE**: Denied. Plaintiff alleges throughout her complaint that Defendants' website is misleading. (*See, e.g.,* SAC ¶¶ 193-208.) Mr. Hudspeth is neither an expert nor lay witness, and his testimony is therefore neither relevant nor admissible. Plaintiff separately has moved to strike Mr. Hudspeth's testimony.

41.     Westwood's website includes informational pages that provide information regarding qualifications for various jobs. For example, Westwood's "How To Become A Police Officer" page states that "[e]ducational requirements for becoming a police officer vary from agency to agency." (Exhibit D, Hudspeth Dep., Ex. 355, at 1.)

**RESPONSE**: Plaintiff admits that Westwood's website contains such a page. Plaintiff further states that this page contains misleading and deceptive information to potential students about the ability to become "[s]tate patrol officers" and "state troopers" under the heading "Job Opportunities." (Defs.' Ex. F at 3.) Plaintiff lacks knowledge of other "informational pages."

42.     The AG's internet marketing expert testified that Westwood's disclosures "would clarify any deception that had potentially occurred with the advertisement." (Exhibit D, Claypool Dep. 121:19-124:2; 128:15-129:11.)

**RESPONSE**: Denied. As an initial matter, Mr. Claypool is not, nor does he purport to be, an expert on deception or confusion. (Defs.' Ex. D, Claypool Dep. 107:3-107:19.) Second, Mr. Claypool's testimony was in response to a hypothetical in which Defendants disclose the relevant limitations of Westwood's degree. (*See, e.g.*, *Id.* 127:17-128:2.) In fact, Westwood

never discloses the fact that the Illinois State Police and FBI do not hire its graduates. (*See* Pl.'s SOF ¶¶ 9-10.)

43. No-one has ever complained to the Attorney General's Office about Westwood's internet advertising. (Exhibit H, Plaintiff's Responses and Objections to Defendant's Fourth Set of Interrogatories to Plaintiff at 5.)

**RESPONSE**: Admitted.

44. Westwood has "used traditional and appropriate methodology" in its AdWords campaign. (Exhibit C, Stricchiola Report at 1.)

**RESPONSE**: Paragraph 44 states a legal conclusion to which no response is required. To the extent Paragraph 44 contains material facts that require a response, Plaintiff denies them. Plaintiff alleges that Westwood's keyword bidding and its failure to disclose the limitations of its degree is a deceptive practice. (SAC ¶¶ 299-310.) Plaintiff has moved to strike Ms. Stricchiola's testimony regarding consumer confusion and deception.

45. Counts III and IV purport to state claims under the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. §§ 5481, *et seq.* (SAC, ¶¶ 484, 493.)

**RESPONSE**: Admitted.

46. The CFPA, 12 U.S.C. §§ 5481, *et seq.,* became effective July 21, 2011, and is not retroactive. (Dkt. 31, Plaintiff's Response to Defendants' Motion to Dismiss, p. 18.)

**RESPONSE**: Plaintiff admits that the CFPA became effective July 21, 2011. Whether or not the CFPA is retroactive is a legal conclusion, not a material fact, and therefor Plaintiff denies that allegation.

47. The allegations of Counts III and IV of the AG's SAC are not limited to the timeframe of July 21, 2011 to the present, but instead incorporate all of the allegations from the

SAC into those Counts. (SAC, ¶¶ 474, 485.)

**RESPONSE**: Denied. Plaintiff incorporates all of her allegations as they are illustrative of the practices she seeks to enjoin through Counts III and IV. Plaintiff does not intend to pursue claims under Counts III and IV against conduct that preceded July 21, 2011.

48.     Nor are the remedies that the AG seeks for Count III and IV limited to the effective time period of the CFPA. (SAC, 494; Prayer for Relief.)

**RESPONSE**: Denied. Plaintiff's intention is not to pursue remedies under Counts III and IV against conduct that preceded July 21, 2011.

49.     For example, Prayer for Relief J asks the Court to "Order[] rescission of all APEX contracts with Illinois Criminal Justice students under the Consumer Financial Protection Act of 2010;" and Prayer for Relief K asks the Court to "Order[] disgorgement against Defendants under the Consumer Financial Protection Act of 2010." (SAC, ¶ 494; Prayer for Relief.)

**RESPONSE**: Admitted.

Respectfully submitted,

THE PEOPLE OF THE STATE OF
ILLINOIS, by LISA MADIGAN,
ATTORNEY GENERAL OF ILLINOIS,

BY:      */s/  Samuel A.A. Levine*
                Assistant Attorney General

**GARY CAPLAN**
Assistant Chief Deputy Attorney General
**DEBORAH HAGAN**
Division Chief, Consumer Protection Division
**SUSAN ELLIS**
Chief, Chicago Consumer Fraud Bureau
**JOHN WOLFSMITH**
Assistant Attorney General, Split Litigation Bureau
**CECILIA ABUNDIS**
**KHARA COLEMAN WASHINGTON**
**OSCAR PINA**
**JOSEPH SANDERS**
Assistant Attorneys General, Consumer Fraud Bureau
(312) 814-4984

## <u>CERTIFICATE OF SERVICE</u>

I, Samuel Levine, an Assistant Attorney General, certify that on January 30, 2015, I
caused a true and correct copy of the attached Response to Defendants' Statement of Facts to be
filed and served via the CM/ECF system to all attorneys of record on the system in this matter,
including:

Joseph Duffy
William P. Ziegelmueller
Mariah Moran
Henry Baskerville
**Stetler Duffy & Rotert, LTD**
Counsel for Defendants
10 S. LaSalle Street, Suite 2800
Chicago, Illinois 60603

BY:      */s/  Samuel A.A. Levine*
                Assistant Attorney General
                Consumer Fraud Bureau
                100 W. Randolph St., 12th Fl.
                Chicago, IL 60601
                (312) 814-4984
                slevine@atg.state.il.us

21